1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7                    EASTERN DISTRICT OF WASHINGTON
8
9   CLIFFORD DOUGLAS,                          No. 1:15-CV-03119-JTR
10               Plaintiff,
                                               ORDER GRANTING PLAINTIFF'S
11               v.                            MOTION FOR SUMMARY
                                               JUDGMENT
12
13  CAROLYN W. COLVIN,
14  Commissioner of Social Security,
15               Defendant.
16

17        **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

18  No. 13, 17.  Attorney D. James Tree represents Clifford Douglas (Plaintiff);

19  Special Assistant United States Attorney Daphne Banay represents the

20  Commissioner of Social Security (Defendant).  The parties have consented to

21  proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative

22  record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's

23  Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary

24  Judgment; and **REMANDS** the matter to the Commissioner for additional

25  proceedings pursuant to 42 U.S.C. § 405(g).

26                          **JURISDICTION**

27        Plaintiff filed an application for Supplemental Security Income (SSI) on

28  January 5, 2012, alleging disability since June 1, 2007, due to suicidal thoughts,

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

back pain, neck pain, leg spasms, and depression.  Tr. 291-297, 334, 339.   The application was denied initially and upon reconsideration.  Tr. 208-216, 218-224. Administrative Law Judge (ALJ) Mary Gallagher Dilley held a hearing on November 13, 2013, at which Plaintiff, represented by counsel, and vocational expert, Trevor Duncan, testified.  Tr. 35-76.  The ALJ issued an unfavorable decision on December 16, 2013.  Tr. 18-28.  The Appeals Council denied review on May 7, 2015.  Tr. 1-4.  The ALJ's December 16, 2013, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on July 9, 2015.  ECF No. 1.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff had prior applications for Disability Insurance Benefits (DIB) and SSI on October 6, 2008.  Tr. 80.  Plaintiff attended a hearing before an ALJ on these applications, and the ALJ issued an unfavorable decision denying benefits on February 3, 2010.  Tr. 80-89.  The ALJ in that decision determined that Plaintiff could perform a limited range of light work and identified Plaintiff's past relevant work as carpet layer and construction worker, both jobs with heavy exertional levels.  Tr. 84, 87.  Plaintiff then reapplied for DIB and SSI benefits on March 2, 2011.  Tr. 274-289.  Again, upon denial at the initial and reconsideration levels, Plaintiff was found to be capable of a limited range of light work.  Tr. 102, 117-118, 135-136, 153-154.

Plaintiff filed his most recent SSI application at the age of 55.  Tr. 291. Plaintiff completed the twelfth grade in 1976.  Tr. 340.  He last worked in as a temporary laborer in 2007, stating he stopped working because of his conditions. Tr. 339-340.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 2

**STANDARD OF REVIEW**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL EVALUATION PROCESS**

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once the claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant

cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On December 16, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 5, 2012, the date of the most recent SSI application. Tr. 20.

At step two, the ALJ determined Plaintiff had the following severe impairments: lumbar degenerative disc disease and degenerative joint disease; affective disorder; and somatoform disorder. Tr. 21.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 21.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of medium of work with the following additional limitations: "This individual can lift and carry 50 lbs. occasionally and 25 lbs. frequently. He is able to perform simple repetitive tasks." Tr. 22. The ALJ concluded that Plaintiff was able to perform his past relevant work as an electronics assembler and forklift operator. Tr. 28.

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from January 5, 2012, through the date of the ALJ's decision, December 16, 2013. Tr. 28.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's

ORDER GRANTING PLAINTIFF'S MOTION . . . - 4

decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) failing to properly weigh the medical opinions in the file; (2) improperly separating out the duties of Plaintiff's past relevant work; and (3) failing to properly consider Plaintiff's credibility.

## DISCUSSION

### A.    Medical Opinions

Plaintiff argues that the ALJ failed to properly consider and weigh the medical opinions expressed by Holly Bassier, D.O., Marie Ho, M.D., William Shanks, M.D., Daniel Seltzer, M.D., and Jeff Merril, M.D.  ECF No. 13 at 7-16.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician.  *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  Likewise, when an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons.  *Lester*, 81 F.2d at 830.  When an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for

1    rejecting the opinion of the examining physician.  *Id*. at 830-831.

2        The specific and legitimate standard can be met by the ALJ setting out a

3    detailed and thorough summary of the facts and conflicting clinical evidence,

4    stating his interpretation thereof, and making findings.  *Magallanes v. Bowen*, 881

5    F.2d 747, 751 (9th Cir. 1989).  The ALJ is required to do more than offer his

6    conclusions, he "must set forth his interpretations and explain why they, rather

7    than the doctors', are correct."  *Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir.

8    1988).

9        **1.    Holly Bassier, D.O.**

10       On January 16, 2008, Dr. Bassier completed Physical Evaluation form for

11   the Washington State Department of Social and Health Services (DSHS).  Tr. 513-

12   516.  Dr. Bassier diagnosed Plaintiff with lumbosacral degenerative disk, stating it

13   affected Plaintiff's ability to sit, stand, walk, lift, handle, and carry.  Tr. 515.  She

14   opined that Plaintiff's overall work level was sedentary, defined as "the ability to

15   lift 10 pounds maximum and frequently lift and/or carry such articles as files and

16   small tools.  A sedentary job may require sitting, walking, and standing for brief

17   periods."  *Id*.  She stated the overall limitations would continue for at least twelve

18   months.  Tr. 516.  In her chart notes, Dr. Bassier stated, "[w]ould rate as marked

19   impairment [with] degree of difficulty on physical exam and doubt [patient] could

20   perform any work above sedentary and even that with difficulty."  Tr. 458.[1]

21       The ALJ gave Dr. Bassier's opinion "limited weight" because (1) the

22   purpose of the evaluation was for a DSHS public assistance and not treatment, (2)

23   Dr. Bassier was not aware of Plaintiff's activities of daily living, and (3) Dr.

24   Bassier did not mention Plaintiff's history of drug use.

25   _____

26       [1]The ALJ refers to this evaluation and opinion occurring on January 26,

27   2008, however, the evaluation report is dated January 16, 2008, the same date as

28   the DSHS evaluation form.  Tr. 24, 457-458.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 6

The ALJ's first reason for rejecting Dr. Bassier's opinion, that it was procured for the purpose of determining DSHS public assistance, is not a specific and legitimate reason.

The Ninth Circuit, the purpose for which medical reports are prepared does not provide a legitimate basis for rejecting them. *Lester*, 81 F.3d at 832. The fact that an evaluation was procured for the purpose of evaluating eligibility through another agency program is not a specific and legitimate reason to reject the opinion. Defendant concedes this in her brief. ECF No. 17 at 4.

The second reason that ALJ gave for rejecting Dr. Bassier's opinion, that there was no evidence that Dr. Bassier was aware of Plaintiff's activities, such as driving to Spokane to visit his grandchildren, is not a specific and legitimate reason.

The Ninth Circuit has held that an ALJ may reject a doctor's opinion of a claimant's limitations because they appear inconsistent with a claimant's level of self-reported activity. *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). However, the ALJ failed to state how driving is inconsistent with Dr. Bassier's opinion that Plaintiff was capable of sedentary work. *See Embrey*, 849 F.2d at 421-422 (the ALJ is required to do more than offer his conclusions, he "must set forth his interpretations and explain why they, rather than the doctors', are correct").

The ALJ's third reason for rejecting Dr. Bassier's opinion, that Dr. Bassier did not mention Plaintiff's history of drug use, is not a specific and legitimate reason. An ALJ may reject a physician's opinion of limitations because substance use rendered the testing that the opinion was based upon unreliable. *Andrews*, 53 F.3d 1039. In *Andrews*, a psychologist performed psychological testing that was determined to be unreliable due to drug use. *Id*. Here, there is no evidence that Plaintiff's drug use rendered Dr. Bassier's objective evaluation on January 16, 2008, unreliable. Dr. Bassier completed a physical evaluation of Plaintiff's neck,

thoracic spine, and lumbar spine. Tr. 457. The evaluation included a review of Plaintiff's 2005 MRI, range of motion testing, palpations, and strength testing. Tr. 457-458. Additionally, the ALJ determined that Plaintiff's drug use was not a severe impairment earlier in the decision, Tr. 21, meaning it did not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. § 416.921(a). Considering none of the ALJ's reasons for rejecting Dr. Bassier's opinion met the lesser standard of specific and legitimate, the ALJ failed to provide legally sufficient reasons for her rejection of the opinion.

### 2.    Marie Ho, M.D.

On June 18, 2011, Dr. Ho completed a consultative examination of Plaintiff. Tr. 473-479. She diagnosed Plaintiff with degenerative disk disease and anxiety/depression. Tr. 478. Dr. Ho opined that Plaintiff was limited to standing and walking at least two hours, but less than four hours in an eight-hour workday, he was limited to sitting less than six hours in an eight-hour workday, he was limited to lifting and carrying ten pounds occasionally and ten pounds frequently, and he was to avoid climbing, balancing, kneeling, stooping, and crouching. Tr. 478-479.

The ALJ gave limited weight to Dr. Ho's opinion because (1) she made no mention of Plaintiff's history of drug use, and (2) Dr. Ho reviewed a 2005 MRI in forming her opinion and this opinion was inconsistent with the 2008 MRI. Tr. 25. Plaintiff asserts that the specific and legitimate standard applies to Dr. Ho's opinion. ECF No. 13 at 10.

The ALJ's first reason for rejecting Dr. Ho's opinion, that she failed to mention Plaintiff's history of drug use, is not a specific and legitimate reason. As addressed above, an ALJ may reject a physician's opinion of limitations because substance use rendered testing unreliable. *Andrews*, 53 F.3d 1039. Here, the ALJ already credited that Plaintiff's sobriety date of April 24, 2011. Tr. 21. Therefore, there is no evidence that Plaintiff was under the influence of any drugs during Dr.

Ho's June 18, 2011, evaluation sufficient to render Dr. Ho's testing as unreliable.

The ALJ's second reason for rejecting Dr. Ho's opinion, that she relied upon a 2005 MRI and a more recent 2008 MRI contradicted her opinion, is not a legitimate and specific reason supported by substantial evidence. The 2008 MRI was compared to the November 29, 2005, MRI and the reviewing physician stated that "[t]here has been no change in the lumbar spine since 11/29/2005." Tr. 467. Therefore, it is immaterial which MRI was reviewed by Dr. Ho because each revealed essentially the same findings. Therefore, the ALJ's reason is not supported by substantial evidence. As such, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Ho's opinion.

### 3.    William Shanks, M.D.

On September 25, 2008, Dr. Shanks evaluated Plaintiff and diagnosed him with "[d]egenerative disc disease and arthritis in the lumbar spine, most pronounced at L3-4, L4-5 and L5-S1 levels." Tr. 399-401. Dr. Shanks opined that Plaintiff "would be severely restricted as far as his activity level in view of his lumbar spine condition." Tr. 401. Dr. Shanks further opined that Plaintiff was "severely limited" meaning "unable to lift at least 2 pounds or unable to stand and/or walk." Tr. 403.

The ALJ gave "some weight" to Dr. Shanks' opinion because (1) it was not as recent as Dr. Merrill's and Dr. Seltzer's opinions, (2) Dr. Shanks could not have known Plaintiff's subsequent charge and incarceration for drug possession, and (3) Dr. Shanks could not have known Plaintiff's self-reported activities and medical improvement since his prison release in July 2011.

The ALJ's first reason for rejecting Dr. Shanks' opinion, that it was more recent than Dr. Merrill's and Dr. Seltzer's opinions, does not meet the specific and legitimate standard. As discussed below, the ALJ's reliance on Dr. Merrill's and Dr. Seltzer's opinions are not free from error. Therefore the ALJ's determination giving their opinions greater weight is not sufficient to reject Dr. Shanks' opinion.

The ALJ's second reason for rejecting Dr. Shanks' opinion, that he could not have known of Plaintiff's subsequent charge and incarceration for drug possession, is not a specific and legitimate reason. An ALJ may reject a physician's opinion of limitations because substance use rendered the testing that the opinion was based upon unreliable. *Andrews*, 53 F.3d 1039. However, Dr. Shanks stated that Plaintiff's diagnosis was not caused or aggravated by alcohol or drug abuse. Tr. 404. Additionally, the ALJ failed to address how drug use would have rendered Dr. Shanks' testing unreliable. The orthopedic exam included range of motion testing palpation, straight leg raising tests, strength testing, muscle measures, and x-rays. Tr. 400-401. It is unclear how heroin use would affect the results of these physical test. Therefore, the ALJ's reason falls short of the specific and legitimate standard.

The ALJ's third reason for rejecting Dr. Shanks' opinion, that Dr. Shanks could not have known of Plaintiff self-reported activities and medical improvement since his release in 2011, is not a specific and legitimate reason. An ALJ may reject a doctor's opinion of a claimant's limitations because they appear inconsistent with a claimant's level of self-reported activity. *Rollins*, 261 F.3d at 856. However, the ALJ failed to state what activity Plaintiff reported that was inconsistent with Dr. Shanks' opinion. As for the medical improvement since Plaintiff's release, the only medical improvement the ALJ found was in Plaintiff's mental health impairments, not his physical impairments. Tr. 26. Additionally, the 2011 MRI showed additional degeneration when compared to the 2008 MRI, thus supporting the notion that Plaintiff's physical impairments had not improved. Tr. 467, 490. The ALJ's reasons failed to meet the lesser standard of specific and legitimate. Therefore, the ALJ failed to provide legally sufficient reasons for rejecting Dr. Shanks' opinion.

### 4.    Daniel Seltzer, M.D.

On July 25, 2011, Dr. Seltzer completed an evaluation for DSHS and

provided an opinion pending test results.  Tr. 485-486.  Prior to receiving the test results, Dr. Seltzer opined Plaintiff could stand for two to four hours, sit for four to six hours, occasionally lift 35 to 50 pounds, and frequently lift 25 to 35 pounds.  Tr. 485.  On August 4, 2011, Dr. Seltzer provided an addendum to his report, stating that he reviewed an MRI performed August 1, 2011, and stated "[t]here are specific restrictions that would be applicable other then and avoidance of very heavy types of jobs.  Weight limitations would be in the range of approximately up to 50 lbs.  Otherwise there are no specific disabilities or limitations which would be applicable."  Tr. 489.  The ALJ gave Dr. Seltzer's opinion "significant weight."  Tr. 26.

Plaintiff argues that the ALJ erred in rejecting the limitations addressed in the July 25, 2011, opinion.  ECF No. 13 at 14-15.  Defendant asserts that Dr. Seltzer's July 25, 2011, opinion was amended with the August 4, 2011, letter to only include a lifting restriction.  ECF No. 17 at 13.  The Court agrees with Defendant that Dr. Seltzer clearly intended to amend his opinion in the August 4, 2011, letter, therefore the letter is the opinion to be considered by the ALJ.  However, Dr. Seltzer's opinion in the August 4, 2011, letter is unclear.  First, Dr. Seltzer states that there are specific restrictions in addition to a lifting restriction: "There are specific restrictions that would be applicable other than and avoidance of very heavy types of work."  Tr. 489.  The next two sentences define Plaintiff's lifting restriction and contradicts the prior sentence by stating that besides the lifting restriction "there are no specific disabilities or limitations which would be applicable."  *Id.*  Therefore, Dr. Seltzer's opinion is on its face contradictory.  It is unclear if Dr. Seltzer intended to incorporate some of the exertional restrictions from the July 25, 2011, letter or if he was actually just limiting Plaintiff to lifting no more than 50 pounds.  Considering the ALJ failed to provide legally sufficient reasons to reject the opinions of the aforementioned physicians, the Court cannot allow the ALJ's reliance on Dr. Seltzer's ambiguous opinion to stand.

1    **5.    Jeff Merrill, M.D.**

2         On January 28, 2013, Dr. Merrill completed an evaluation and report for

3    DSHS.  Tr. 553-554, 573-575.  Dr. Merrill opined that Plaintiff could perform only

4    frequent postural changes, he could stand for six hours, and could lift 50 pounds.

5    Tr. 574.  Dr. Merrill limited Plaintiff to medium work.  Tr. 575.  The ALJ gave Dr.

6    Merrill's opinion "significant weight."  Tr. 25.  However, the ALJ failed to address

7    any postural limitations in her residual functional capacity determination.  Tr. 22.

8    Essentially, by failing to find any postural limitations as part of the residual

9    functional capacity, the ALJ rejected this portion of Dr. Merrill's opinion.  Here,

10   the ALJ failed to provide any reason why Dr. Merrill's opinion, even a portion of

11   it, was rejected.  Therefore, the ALJ errored in her treatment of Dr. Merrill's

12   opinion.  While limiting postural activities to frequent may not have been a work

13   preclusive change to the residual functional capacity assessment, it could have

14   resulted in a different step four determination.  Considering the ALJ failed to

15   provide legally sufficient reasons for rejecting the opinions of Dr. Bassier, Dr. Ho,

16   and Dr. Shanks, the Court cannot let the ALJ's reliance on Dr. Merrill's opinion

17   stand.

18        The case is hereby remanded for additional proceedings for the ALJ to

19   readdress the medical source opinions in the record.

20   **B.    Past Relevant Work**

21        Plaintiff challenges the ALJ's step four determination in this case, arguing

22   that the ALJ erred in separating out Plaintiff's past relevant work at IBM[2] into two

23   separate jobs.  ECF No. 13 at 18-19.

24        Plaintiff testified at the hearing that his work at IBM consisted of driving a

25   forklift and assembling kits of "sensitive parts that go out for computers."  Tr. 51-

26   _____

27        [2]This work appears as General Warehouse Services Corporation on

28   Plaintiff's earnings statements.  Tr. 51, 299.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 12

52.  He additionally testified that he held previous positions as a carpet installer.
Tr. 50-51.  The vocational expert testified that Plaintiff's past relevant work
included flooring installer, requiring a heavy exertional level, and forklift operator,
requiring a medium exertional level, and an electronic assembler, requiring a light
exertional level.  Tr. 68-69.  In the December 16, 2013, decision, the ALJ found
that Plaintiff was capable of performing his past relevant work as an electronics
assembler and a forklift operator as the jobs were actually performed and as they
are generally performed.  Tr. 28.  Essentially, the ALJ separated the work
performed for IBM into two separate jobs.

At step four, a claimant has the burden to prove that he cannot perform his
past relevant work "either as actually performed or as generally performed in the
national economy."  *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002).
However, the ALJ may not classify a past job "according to the least demanding
function." *Carmickle v. Comm'r of Soc. Sec. Admin*, 533 F.3d 1155, 1166 (9th Cir.
2008) (quoting *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985)).  In
*Carmickle*, only 20 percent of the claimant's duties as a construction supervisor
involved supervision; the remainder of his time was spent performing manual
labor.  *Id*.  The Ninth Circuit held that the ALJ erred in categorizing the claimant's
job as "a purely supervisory position."  *Id*.  Similarly, in *Valencia*, the ALJ erred in
classifying the claimant's prior work as a "tomato sorter" involving only light
exertion because the claimant was actually an "agricultural laborer" who mostly
performed other, medium exertion tasks.  751 F.2d at 1086.  And, in *Vertigan v.
Halter*, the ALJ erred by categorizing the claimant's past work as a "cashier" when
she was actually a "pharmacy clerk" and cashier work was only "a small part of
her job." 260 F.3d 1044, 1051 (9th Cir. 2001).  In all three cases "the least
demanding aspect" of the claimant's past job was something the claimant did less
than half the time, and the ALJ erred in equating that one task with a full time job.
These cases were distinguished in the Ninth Circuit's recent decision in *Stacy v.*

ORDER GRANTING PLAINTIFF'S MOTION . . . - 13

*Colvin*, in which the claimant performed supervisory duties 70 to 75 percent of the time. The Ninth Circuit held that the fact that he occasionally did other, non-supervisory, tasks did not alter the fundamental nature of his work. Therefore, the ALJ's determination that claimant's past relevant work included a Dictionary of Occupational Titles (DOT) reference to a purely supervisory job was not in error. No. 13-36025, 2016 WL 3165597 (9th Cir. June 7, 2016).

Here, the record is not sufficiently developed to determine if Plaintiff's job at IBM as an electronics assembler was the least demanding function of the job and should not be considered past relevant work under *Carmickle*, *Valencia*, and *Vertigan* or if it was the task Plaintiff performed a majority of the time and should be considered as past relevant work instead of the occupation of forklift operator under *Stacy*.

Defendant argues that because the ALJ found Plaintiff capable of performing both tasks, *Carmickle*, *Valencia*, and *Vertigan* do not apply. ECF No. 17 at 17-18. However, because the case is being remanded with instructions to reconsider the weight provided to medical source opinions and to form a new residual functional capacity determination, it is necessary for the ALJ to readdress step four on remand.

The Court acknowledges that on remand the work performed at IBM may be outside the time frame to be considered past relevant work. *See* 20 C.F.R. § 416.965(a). However, should the ALJ consider the work performed at IBM for any purpose, the ALJ is instructed to take additional testimony regarding the proportionality of each task performed and determine whether or not one task was performed at a high enough rate that the other task was not sufficient to change the fundamental nature of the work. If the ALJ determines that the work at IBM was a true composite job and is unable to determine if one task was the fundamental nature of the work, the ALJ is directed to POMS DI 25005.020, providing that an ALJ is required to determine whether or not a claimant is able to perform a

ORDER GRANTING PLAINTIFF'S MOTION . . . - 14

composite job as actually performed because there is no representation of a composite job in the DOT.

## C.    Credibility

Plaintiff also challenges the credibility determination made by the ALJ. ECF No. 13 at 16-18.  Considering the case is being remanded for additional proceedings, the ALJ is instructed to address Plaintiff's symptom statements on remand.

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Secretary of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990).  *See also Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met).  This policy is based on the "need to expedite disability claims."  *Varney*, 859 F.2d at 1401.  But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate.  *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated.  Further proceedings are necessary for the ALJ to properly consider and weigh the medical source opinions in the record.  In addition, the ALJ is instructed to assess

ORDER GRANTING PLAINTIFF'S MOTION . . . - 15

Plaintiff's symptom statements, form a new residual functional capacity determination reflecting the medical source opinions credited in the file, and make a new step four determination. Furthermore, the ALJ is to supplement the record with any additional outstanding medical evidence. The Court notes that there is a prescription for an EMG/Nerve Conduction testing on the lower extremities written on July 25, 2011, by Dr. Seltzer. Tr. 491. The ALJ is specifically instructed to supplement the record with this nerve conduction testing if it was in fact performed.

<b>CONCLUSION</b>

Accordingly, **IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3.    Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED August 15, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 16